UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES ex rel. JOHN D. KING,

    Plaintiff,

v.                                            CASE NO: 8:08-cv-2416-T-23EAJ

DSE, INC., et al.,

    Defendants.
_____/

**ORDER**

Under the False Claims Act, 31 U.S.C. §§ 3729-3733 and 18 U.S.C. § 1001, the qui tam relator sues the defendants, manufacturers of 40-millimeter grenades and components.[1] The relator alleges that the grenades manufactured by the defendants failed to meet contract specifications and "were not combat-worthy, were unsafe and should not have been used for military combat and/or military exercises and placed and continue to place military personnel in bodily danger." (Doc. 28, Page 5) The relator's original complaint asserts that a defective grenade can "cause harm or death [to American military personnel] by detonating too close to a shooter or by failing to neutralize an enemy because it does not detonate." (Doc. 1, Page 7) The relator asserts that the defendants failed to follow proper quality control procedures and

---

[1] Each defendant performed a different role in the grenade manufacturing process, either manufacturing the complete grenade (DSE and KDI), manufacturing the fuse (DSE Fuzing), manufacturing a fuse component known as an "escarpment" (JKS), or applying an anti-corrosion finish to the grenade (Company X). For the sake of simplicity, the term "grenades" includes both a complete grenade and a grenade component.

shipped defective grenades in order to meet production deadlines.  The relator alleges that the defendants violated the False Claims Act by submitting certifications and bills that represented that the grenades met contract specifications.  The relator worked for defendant DSE and asserts that he was terminated as DSE's Quality Assurance Manager because he opposed the sale of defective grenades and refused to certify that the grenades met contract specifications.

Each defendant moves (Docs. 50, 51, 52, and 53) to dismiss and asserts (1) that the relator fails to allege his False Claims Act claims with particularity and (2) that the relator's claims of false billing over many years are not credible because he worked at DSE for only several months.  The relator responds (Docs. 59, 60, 61, and 62) and asserts (1) that his complaint meets the pleading standard in <u>United States ex rel. Clausen v. Laboratory Corporation of America</u>, 290 F.3d 1301 (11th Cir. 2002); (2) that <u>Clausen</u>, which involved a medical testing company, is inconclusive if applied to a <u>qui tam</u> action against a defense contractor; and (3) that <u>United States ex rel. Walker v. R & F Properties of Lake County</u>, 433 F.3d 1349 (11th Cir. 2005), obviates any requirement that the relator work for the defendant for any particular length of time.

<u>Clausen</u> holds that a relator asserting a claim for health care fraud must allege with specificity a claim or bill submitted to the government.  In other words, a relator who is aware of an improper, inferior, or bogus medical product or service cannot sustain a False Claims Act action without alleging a particular bill sent to, and paid by, the government. <u>Clausen</u> states that "[t]he False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal

policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe."  290 F.3d at 1311.

The purpose of Rule 9(b), as interpreted by Clausen, is to ensure (1) that an opportunistic relator is unable to tarnish the reputation of a medical provider by instituting a spurious lawsuit and (2) that a minor deviation from a standard of care does not expand into a quasi-criminal proceeding in federal court.[2]  Neither purpose is served by dismissal of this action.  United States ex rel. Hill v. Morehouse Medical Associates, 2003 WL 22019936 at *5, No. 02-14429 (11th Cir. 2003), in which the relator alleged the defendant's general billing practices but failed to allege a specific billing, clarifies that the Clausen standard is relaxed if the complaint alerts the defendants "to the precise misconduct with which they are charged and there is no evidence that [the] allegations

---

[2] Footnote 24 of Clausen, which addresses this issue and suggests that manner and timing of the billings were in dispute, states in full:

> Clausen argues that his allegations give LabCorp enough information to formulate a defense to the charges, which is one of the purposes of Rule 9(b).  *See* Durham, 847 F.2d at 1511.  However, we believe Clausen's failure to plead all the elements of his claim with specificity violates an equally strong purpose of Rule 9(b)--protecting defendants from frivolous suits, or "spurious charges of immoral and fraudulent behavior." *Id.* (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984)).  When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements.  *See* Stinson, 755 F.Supp. at 1053 (referring to these as "other important purposes" of Rule 9(b)).  This is especially so in cases involving the False Claims Act, which provides a windfall for the first person to file and permits recovery on behalf of the real victim, the Government.
>
> We add that our holding that Rule 9(b) has not been satisfied applies equally to Clausen's claims styled as testing irregularities (the self-referral, duplicative test, screening and unbundling schemes) and billing irregularities (the blood draw and trip charge schemes) because, as stated previously, a false claim must be presented for any liability to attach under the False Claims Act. And  Clausen provides no support for his allegations that any claims were actually submitted.

- 3 -

are spurious." (internal quotes and citations omitted) The relator's detailed eighty-eight page amended complaint undoubtedly has alerted the defendants to the pertinent acts and omissions. No party disputes the fact that the defendants billed for, and were paid for, their grenades. In Clausen, by contrast, the manner and timing of the defendant's billings were in dispute. 290 F.3d 1312 at n.21.

United States ex rel. Lockhart v. General Dynamics, 529 F.Supp.2d 1335, 1341 (N.D. Fla. 2007), featuring similar allegations against a defense contractor, provides the appropriate standard for evaluating a relator's claim against a defense contractor:

> Here the complaint gives ample indication of the reliability of Mr. Lockhart's claim. According to the complaint, Mr. Lockhart knows propellant was manufactured at the facility at which he worked for sale to the military, because he was actively engaged in the process. He knows required tests were not done, because it was Mr. Lockhart who, at the instruction of his supervisors, did not perform the tests. This complaint alleges with adequate particularity both the substance of the fraud and the requisite reliable basis for Mr. Lockhart's knowledge of it. Indeed, Mr. Lockhart's personal participation puts this complaint on a markedly higher level than any of the Eleventh Circuit cases in which a qui tam complaint was held deficient.
>
> To be sure, this complaint does not give dates or amounts of deliveries or payments. The fraud, though, was the failure to test and the failure to disclose the failure to test. One cannot give the date of an event that did not happen, or identify the person who made a disclosure that was not made. The complaint specifically identifies the tests that were not conducted, and gives precise and credible information on how Mr. Lockhart knows what he alleges. This is sufficient to satisfy Rule 9(b).
>
> This result makes sense. If Mr. Lockhart's allegations are true, then this is the very kind of situation for which Congress adopted the False Claims Act. Mr. Lockhart–an insider with reliable knowledge of serious wrongdoing, precisely the kind of person the statute is designed to motivate to file an action of this nature–has said all one could expect or demand. . . . The complaint will not be dismissed for lack of particularity.

In other words, in the medical context the harm to the government arises from the act of billing. If a patient received improper treatment but the government was not billed, the government suffers no actionable consequence (under the FCA). The government may have an interest in enforcing FDA regulations or ensuring that a doctor provides proper medical care, but sloppy recordkeeping or substandard treatment harms no pecuniary interest of the government absent a billing. By contrast, improper quality control procedures in assembling military equipment distinctly harm the government entirely distinct from any financial impact. A combat soldier equipped with a grenade that detonates prematurely (or not at all) finds himself enduring a deadly risk and a deadly disadvantage, notwithstanding the price the government paid (whether too much or too little or nothing at all). As Judge Hinkle noted in Lockhart:

> It would be ironic indeed if a person with reliable knowledge that an arms supplier has defrauded the military could not bring a qui tam action. This is, after all, very close to the kind of wrongdoing that led President Lincoln to seek adoption of the False Claims Act in the first place.

529 F.Supp.2d at 1341.

The defendants Kaman Precision Products ("Kaman"), GTI Systems ("GTI"), and JKS Industries ("JKS") also assert that, because he worked only for DSE, the relator lacks knowledge of their quality control procedures. Because Kaman, GTI, and JKS were subcontractors to the relator's employer and because the relator inspected and handled components manufactured or handled by Kaman, GTI, and JKS, the relator was situated to observe the deficiencies alleged in the complaint. The allegations in the complaint are sufficient to allege that each defendant knowingly participated in a scheme to provide substandard grenades to the United States Armed Forces.

Lastly, DSE asserts that because the relator's False Claims Act allegations fall short of the applicable pleading standard, the relator's wrongful termination claim also fails. However, the relator's wrongful termination claim survives along with his False Claims Act allegations.

## **CONCLUSION**

A close inspection of the eighty-eight page amended complaint convinces the disinterested reader that the allegations sufficiently allege claims under the False Claims Act by providing adequate factual assurance that, although not knowing every detail of time and amount, the relator alleges more than mere speculation and surmise and presents sufficient evidence of ability and opportunity to acquire reliable and germane knowledge of the wrongs he alleges.

The motions to dismiss (Docs. 50, 51, 52, and 53) are **DENIED**.

ORDERED in Tampa, Florida, on May 17, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE