UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES ex rel. JOHN D. KING,

    Plaintiff,

v.                                                                          CASE NO.: 8:08-cv-2416-T-23EAJ

DSE, INC., et al.,

    Defendants.
                                                                        /

**ORDER**

Under the False Claims Act (FCA"), the relator, John D. King, sues (Doc. 28) DSE, Inc.; DSE Fuzing, LLC; JKS Industries, Inc.; GTI Systems, Inc.; and Kaman Precision Products, Inc. ("Kaman"), formerly known as Kaman Dayron, Inc. ("KDI"). Each defendant moved to dismiss (Docs. 50-53), and a May 17, 2011, order (Doc. 69) denies each motion. Asserting that "the Court failed to address [Kaman's] unique situation," Kaman moves (Doc. 74) for reconsideration of the May 17 order.

KDI manufactured 40-millimeter grenade fuses for the United States from at least January, 2005, until December, 2007, when KDI sold the grenade fuse business and associated assets to DSE.[*] After the sale KDI became Kaman. King consulted for KDI

---

[*] At this stage the well-pleaded facts alleged in the complaint are assumed true. Beck v. Deloitte & Touche, 144 F.3d 732, 735 (11th Cir. 1998).

in 2005 and worked for DSE beginning in April, 2008.  While working for KDI in 2005, King allegedly discovered that KDI's quality-testing process could not accurately determine whether KDI's 40-millimeter grenade fuses met the United States' quality requirement.  King installed a temporary, improved, quality-testing program, which exposed an unacceptable defect rate in KDI's fuses.  King claims that despite the unacceptable defect rate KDI continued to certify compliance with the United States' quality requirement and continued to deliver fuse shipments to the United States.

A motion to reconsider under Rule 59(e), Federal Rules of Civil Procedure, must present "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Altadis USA, Inc. v. NPR, Inc., 344 F.Supp.2d 1349, 1358 (M.D. Fla. 2004) (Moore, J.).  The three grounds "upon which a party may obtain reconsideration of a court order [are] (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear or manifest injustice." Leonard v. Astrue, 487 F.Supp.2d 1333, 1341 (M.D. Fla. 2007) (Howard, J.).  A party may not move for reconsideration merely to re-litigate a settled matter. Kelley, 238 F.Supp.2d at 1326.

Kaman argues that the May 17 order erroneously fails to consider (1) that King had no opportunity while working for DSE to inspect a product manufactured by Kaman and (2) that King had no opportunity to learn of fraud by Kaman.  Kaman neither asserts a change in controlling law nor presents new evidence.  Rather, Kaman contests matters already presented in Kaman's motion to dismiss.  Regardless, Kaman's arguments are without merit.

Kaman argues that King had no opportunity to inspect a product manufactured by Kaman because Kaman exited the 40-millimeter grenade business in December, 2007, and King began working for DSE in April, 2008. Kaman's argument fails for two reasons. First, as King explains, when DSE bought the 40-millimeter fuse business from Kaman, DSE acquired "substantial inventory of 'work in process' that was built by Kaman." (Doc. 76 ¶ 12) King explains further that working for DSE provided King "unlimited access to product[s] purchased, built, and inspected by Kaman and [that King] found [Kaman's] fuses, components . . . and parts to be grossly defective." (Doc. 76 ¶ 12) Second, King supports his claims against Kaman not only with information King gained from working for DSE but also with information King gained from contracting for KDI. King successfully alleges that he had access to Kaman's allegedly defective product.

Kaman argues that King's "allegations make clear that he has no knowledge of any violations by Kaman," (Doc. 74 at 2) and Kaman objects that "nowhere does [King] allege that [] supposed quality issues resulted in any false claims." (Doc. 74 at 4) However, the details King provides about his work for KDI in 2005 defeat Kaman's argument. King claims that he contracted with KDI to review and improve KDI's inspection and testing process. Although Kaman responds that KDI contracted King in a more limited capacity than King claims, Kaman fails to dispute that King at least participated in the installation of quality inspection software or that the quality inspection software exposed "excessively high defect rates." (Doc. 28 ¶ 36) King states that KDI produced and delivered a product with an unacceptable defect rate "several times over what was allowed" by the United States' quality requirement (Doc. 28 ¶ 36), and King

- 3 -

could know that each fuse shipment failed to meet the United States' quality standard because King personally installed the software that collected and analyzed inspection and test data on Kaman's product. Moreover, King states that KDI provided a certificate that claimed that KDI conformed with quality requirements as a part of each fuse shipment to the United States. King sufficiently alleges that KDI executives were aware that the fuse shipments failed to meet the United States' quality standards and that KDI presented a conformance certificate with each fuse shipment anyway. In sum, King identifies the forms that establish the United States' quality standard for Kaman's product, and King alleges actions by KDI that transgress the standard. If a fuse failed when tested by the quality testing process or if the quality testing process was inadequate, Kaman's claiming compliance with the United States' quality standard constitutes a fraudulent claim.

Finally, Kaman argues that King's accusations against Kaman require "an unjustified quantum leap" similar to that of the relators in United States ex rel. Dhawan v. NYC Health and Hosp. Corp., 2000 WL 1610802 (S.D.N.Y. 2000). However, Dhawan, is easily distinguishable. In Dhawan, the relators found that two companies engaged in fraudulent contracting and inferred that three other companies engaged in fraudulent contracting because the three other companies had "affiliation contracts" similar to the first two companies. Neither relator in Dhawan worked for one of the three companies in question, and neither relator provided detail that supported the relators' inference, which was therefore speculative. In contrast, King bases his accusations against Kaman on his employment at KDI in 2005, and King presents detailed

information based on his experience.  King's allegations are far from "an unjustified quantum leap."

Kaman's motion (Doc. 74) for reconsideration is **DENIED**.

ORDERED in Tampa, Florida, on August 4, 2011.

*/s/ Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE